UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE FANADY, <br><br> Petitioner, <br><br> v. <br><br> THOMAS DART, ET AL., <br><br> Respondents. | No. 23 CV 5806 <br><br> Judge Georgia N. Alexakis |

ORDER

Petitioner Steve Fanady, a Cook County Jail detainee, brings this habeas corpus petition through counsel. He seeks release from the County's custody following a civil contempt finding and commitment order against him by the Circuit Court of Cook County stemming from Fanady's divorce proceeding. *See In re: Marriage of Harnack and Fanady*, 2022 IL App (1st) 210143, ¶ 33 (1st Dist. 2022); *see also* [9], [10]. Fanady does not specify whether he brings his petition under 28 U.S.C. §§ 2241 or 2254,[1] but regardless of statutory vehicle, Fanady's habeas petition cannot proceed at this juncture. For the reasons set forth below, the Court abstains from exercising jurisdiction over Fanady's petition pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), and dismisses Fanady's petition accordingly.

STATEMENT

*Overview of* Younger *Abstention Doctrine*

Generally speaking, "federal courts are obliged to decide cases within the scope of federal jurisdiction," and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). At the same time, the Supreme Court has recognized "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* One such class of cases is exemplified by *Younger*, where the Supreme Court held that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Id.* The Supreme Court has since extended *Younger* to cover instances involving civil proceedings that are akin to criminal prosecutions as well as proceedings "that

---

[1] In response to a question from the Court on that point, *see* [8] at 5, Fanady asserted that either statute could apply and he did "not wish to be put in the position of having to choose" because "the issue is so murky" and "[e]specially when his liberty is at stake." *See* [10] at 4.

implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72–73 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 (1987)).

If a state-court proceeding falls within one of these three categories, federal courts then analyze whether three additional conditions are satisfied: (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity in the state-court proceeding to raise constitutional challenges. *See Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994). If all three conditions are satisfied, and if there are no extraordinary circumstances—that is, if there are no allegations of bad faith, harassment, a patently invalid state statute, or an "extraordinarily pressing need for immediate equitable relief" that, if not granted, will irreparably injure the petitioner—federal courts abstain from exercising federal jurisdiction under *Younger*. *See Jacobs*, 571 U.S. at 77; *FreeEats.com, Inc. v. Indiana,* 502 F.3d 590, 596 (7th Cir. 2007).

For the reasons that follow, the Court finds that abstention under *Younger* is appropriate because the underlying proceedings here "implicate a State's interest in enforcing the orders and judgments of its courts" and because the aforementioned additional three conditions are satisfied.

### *The Type of State Proceeding*

Fanady challenges the legality of a civil contempt finding and accompanying commitment order against him that arose as part of the state's attempt to enforce a separate judgment entered against Fanady in a state-court divorce proceeding. The Illinois courts have thoroughly documented the relevant factual and procedural history. *See, e.g.*, *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143; *In re Marriage of Harnack & Fanady*, 2021 IL App (1st) 210014-U, 2021 WL 6099479. This Court summarizes the most relevant aspects of that history as follows:

Fanady's ex-wife, Pamela Harnack, initiated divorce proceedings against Fanady in March 2008. *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 2. Following Fanady's "complete refusal to participate in the dissolution proceedings for more than 15 months," the state trial court entered default judgment against him. *Id.* ¶¶ 2, 4. Pursuant to that default judgment, the court awarded Harnack 120,000 shares of Chicago Board Options Exchange ("CBOE") stock and ordered that the shares be transferred to her. *Id.* ¶ 2. There began nearly ten years of Fanady's attempts to—as the trial court put it—"avoid[] obligations" by challenging, evading, and ultimately failing to comply with, the court's order. *Id.* ¶¶ 3–6 ("Rather than participate in the action and present his own evidence to the court to rebut Harnack's evidence, Fanady chose instead to make underhanded efforts to prevent Harnack from getting her appropriate share of the marital assets and to avoid the trial court's jurisdiction.").

As detailed by the state appellate court, *see id.* ¶¶ 5–34, Fanady's continued failure to transfer the shares culminated in Harnack's petition to enforce the default judgment. *Id.* ¶¶ 17–19. Following a hearing on the petition, the court ordered Fanady to transfer to Harnack "120,000 shares of CBOE Holdings and any other monetary benefits accruing to said shares including but not limited to interest and dividends from the date of the divorce judgment" or, if he no longer possessed those shares, to "pay [Harnack] the value of said shares along with any interest, dividends, or other monetary benefits collected by [Fanady]." *Id.* ¶ 19. Still, Fanady failed to transfer either the shares or the money. *Id.* ¶ 23.

Harnack then filed a petition for a rule to show cause for Fanady's failure to comply with the court's order. *Id.* In response, Fanady argued that it was impossible for him to comply. *Id.* ¶ 24. He alleged that a trust that he established in Belize—which contained "everything he has ever owned"—would only pay "what he requires for his ordinary living expenses, other reasonable expenses required to defend himself and the trust in court, and no more." *Id.* ¶¶ 24–25. Following a hearing, the state trial court found Fanady's nearly ten-year failure to comply with its orders to be "willful and contumacious." *Id.* ¶¶ 32–33. It held Fanady in indirect civil contempt and ordered that he be committed to the Cook County jail until he deposited $10 million (the approximate then-value of the CBOE shares) into escrow with the court or Cook County's Sheriff. *Id.* ¶ 33, 37.

Following an unsuccessful appeal of the contempt order to an Illinois intermediate appellate court, an unsuccessful attempt to seek review from the state supreme court, and several appeals of the underlying divorce proceedings, *see* [26] at 5–6, Fanady remains in custody. He also moved for the trial court to purge or vacate the contempt order, *see* [44] at 1, and is now appealing the denial of that motion in the intermediate appellate court, *see* [50] (Fanady predicted that the parties' briefing of that appeal would be complete as of the issuance of this order).

Given this background, Fanady's petition squarely implicates the state's interest in enforcing the orders and judgments of its courts. His petition directly seeks to undo the civil contempt finding and accompanying commitment order and, in so doing, to also undo—or at very least, severely undermine—the underlying judgment in the divorce proceedings that provided the impetus for the civil contempt finding. *Jacobs,* 571 U.S. at 72–73. Fanady's petition therefore involves a type of case that directly falls under the auspices of *Younger*.

For his part, Fanady argues that he "is not asking this Court to interfere in a judicial matter, only a procedural one"—the procedural issue being the state's purported failure to conduct periodic hearings as part of its contempt proceedings. [30] at 9, 11. But any distinction between the contempt order and the process by which it was secured and continues to be effectuated is a distinction without a difference for purposes of *Younger*. As the Supreme Court explained in *Juidice v. Vail*: "Whether

3

disobedience of a court-sanctioned subpoena, *and the resulting process* leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, … the salient fact is that federal-court interference with the State's contempt *process* is an offense to the State's interest." 430 U.S. 327, 335–36 (1977) (emphases added). *See also Ehlers v. Gallegos*, No. 16 C 5092, 2020 WL 43010, at *8 (N.D. Ill. Jan. 3, 2020) ("Petitioner's habeas challenge to the constitutionality of the *procedures* used during his state court contempt hearing similarly falls within the scope of *Younger* abstention.") (emphasis added). Put another way: the fact that Fanady challenges the process by which he was committed and continues to be committed does not change the relevant *Younger* analysis. His petition still involves proceedings that implicate the state's interest in enforcing the orders and judgments of its courts.

Fanady also argues that his petition does not necessarily involve a state-court proceeding because he is asking that the Sheriff—not the state court—release him. [30] at 7 ("Ground One and Ground Two … do not involve the state court at all and are directed at the Sheriff who should be releasing the Petitioner without any action of the state court being necessary."). But the Sheriff's involvement is another distinction without a difference. Ultimately, Fanady is asking for relief from the ongoing enforcement of a state-court order. A federal ruling on this matter would necessarily require interference with a state-court proceeding, regardless of which entity or individual can release (in the most mechanical sense of the term) Fanady. *See generally Wereko v. Rosen*, No. 22 C 02177, 2023 WL 2241989, at *8 (N.D. Ill. Feb. 27, 2023) ("By seeking equitable relief concerning the ongoing enforcement of the child support order, a federal ruling risks interference with the contempt proceeding.").

### The Three Younger *Conditions*

***The state proceedings are ongoing.*** Fanady remains in civil contempt and in custody. As noted above, he filed a motion to purge or vacate the contempt finding in July 2022, which the Circuit Court of Cook County denied in April 2024. [44] at 6–10. Fanady is now appealing that denial in the state's intermediate appellate court. *See* [44], [50]. Fanady does not appear to dispute that the state-court proceedings are ongoing, although he complains that the state courts have been dilatory. *See* [30] at 9 (alleging that the state court "fails to act in a reasonably diligent manner, and instead inexplicably delays rulings or taking any action"). The Court will address Fanady's complaint about delays when it turns its attention to the question of whether Fanady has an adequate opportunity in the state-court proceedings to raise constitutional challenges. This first condition is otherwise satisfied.

***The proceedings implicate important state interests.*** Ongoing "[p]roceedings related to granting a divorce, child support, or spousal maintenance are areas of 'significant state concern from which the federal judiciary should generally abstain under *Younger*.'" *Ehlers*, 2020 WL 43010, at *9 (quoting *Parejko v.*

4

*Dunn Cnty. Cir. Ct.*, 209 F. App'x 545, 546 (7th Cir. 2006)); *see also Azizarab v. State*, No. 99 C 8167, 2000 WL 152140, at *2 (N.D. Ill. Feb. 4, 2000) ("Core matters of family law, such as divorce and child custody, are considered to be the province of the state courts.").

A state's contempt proceedings likewise implicate important state interests. As the Supreme Court explained in *Pennzoil*:

> A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws … or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman* …. But we think it is of sufficiently great import to require application of the principles of those cases.

481 U.S. at 13 (quoting *Juidice*, 430 U.S. at 335) (internal citations omitted). *Pennzoil*, again relying on *Juidice*, continued:

> Our comments on why the contempt power was sufficiently important to justify abstention also are illuminating: "Contempt in these cases, serves, of course, to vindicate and preserve the private interests of competing litigants, ... but its purpose is by no means spent upon purely private concerns. It stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory."

*Id.* (quoting *Juidice*, 430 U.S. at 336, n.12).

Fanady's request for relief—release from custody owing to a civil contempt finding arising out of a state-court divorce proceeding—thus implicates two important state interests: core matters of family law and the state's contempt process. *See Ehlers*, 2020 WL 43010, at *9 (recognizing the same two state interests where a petitioner sought relief from a contempt finding tied to a divorce judgment).

The Court is unpersuaded by Fanady's assertion that his petition "do[es] not concern important state interests" because it "instead concern[s] due process under the U.S. Constitution." [30] at 8. "[T]he mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 365 (1989). Fanady otherwise has offered no explanation as to how his petition sidesteps important state interests. *See generally* [30]. This second condition is thus satisfied.

***There is an adequate opportunity in the state-court proceedings to raise constitutional challenges.*** Fanady denies that there is an adequate opportunity to present his claims in state court because the state court "fails to act in a reasonably diligent manner, and instead inexplicably delays rulings or taking any action." [30] at 9. He lays out a timeline of motions, hearings, and state court decisions that, in his view, demonstrates the state judicial system's unduly slow pace. *Id.* at 9–10. But the procedural timeline that Fanady lays out, [30] at 10, and which is otherwise reflected in the record before the Court, does not permit the conclusion that the state courts' resolution of Fanady's various motions and requests for appellate review has been so inordinately protracted that it has deprived him of sufficient opportunity to be heard on constitutional claims. *Contra Carter v. Buesgen,* 10 F.4th 715, 721 (7th Cir. 2021) (four-year state court delay was inordinate where there was "no indication that [the state] w[ould] take up his postconviction motion at any time in the foreseeable future").

The Court's conclusion is bolstered by the fact that Fanady's filings in state trial and appellate courts raise constitutional claims. *See, e.g.*, [26-5] at 46; [26-7] at 7; [26-12] at 8–9, 12; [26-13] at 149, 165–67. And it is further bolstered by the fact that state courts have recognized those arguments (albeit have found them to lack merit). *See* [26-8] at 13 (writing that "[t]he record rebuts Fanady's contentions that the "confusing" procedure surrounding the state trial court's contempt order "violated whatever minimal due process Fanady was entitled to receive"); *id.* at 14 (same).

Based on the record before the Court, it will not upset the assumption that the state-court proceedings afford Fanady an adequate venue for his constitutional arguments. *See Pennzoil*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."). This third condition is therefore satisfied.

*Extraordinary Circumstances*

The party claiming that extraordinary circumstances justify the Court's exercise of jurisdiction must demonstrate their existence. It can do so by alleging specific facts showing bad faith or harassment (in other words, "more than mere allegations and conclusions"), or show through "unambiguous authority" that there is no state remedy available to meaningfully, timely, and adequately remedy its injuries. *Crenshaw v. Sup. Ct. of Indiana,* 170 F.3d 725, 729 (7th Cir. 1999); *FreeEats.com,* 502 F.3d at 596. Fanady "believes that exceptional circumstances exist in this case." [30] at 11. He provides no further discussion of, or substantiation for, this conclusion. *Id.*

To the extent that Fanady wants the Court to treat as an "extraordinary circumstance" the length of his time in custody—approximately two years and ten

months to date—Fanady has presented no authority to support such a proposition, and the Court is not aware of authority helpful to Fanady on this point either. And regardless of the quality of Fanady's advocacy on this point, the Court is disinclined to view the length of Fanady's time in custody as an extraordinary circumstance where, as already explained, Fanady has pursued and continues to pursue adequate avenues for review and relief in state court, where there are multiple and important state interests at play, and where state proceedings remain ongoing.

\* \* \*

One final note: The Court's decision to abstain from hearing Fanady's habeas petition under *Younger* is consistent with the district court's decision in a separate action against respondents that Fanady has brought under 42 U.S.C. § 1983. *See Fanady v. Dart,* No. 22 CV 4180, Dkt. 21 (N.D. Ill.).

Earlier in that § 1983 action, Fanady moved for a temporary restraining order seeking, among other forms of relief, his release from custody and placement on home electronic monitoring. *Id.*, Dkt. 3. The district judge in that matter denied Fanady's motion in part on *Younger* grounds. *Id.*, Dkt. 21 at 31. That court explained:

> [T]his does seem like a situation where this ongoing state court proceeding directly on point where the same essential requests for relief have been made at an earlier point in time would be disrupted … if I were to come in and … order him to be released. And in the interest of federal-state comity and really all the principles that underlie *Younger*, I don't think that would be appropriate.

*Id.* at 31; *see also id.* at 28 ("[H]e's looking for a decision that would directly impact the ongoing state court proceedings, and that would directly impact the ongoing state court proceedings, and that is a *Younger* issue."); *id.* at 30 ("The ability of the judicial officer to enforce his or her own orders and to require respect for the orders of the Court is one of our most important state interests."); *id.* at 31 ("Whether it's constitutional … has been raised in that state court proceeding, and I trust that my colleagues on the state court can handle those issues.").

The Court, of course, has engaged in its own analysis of the relevant issues for purposes of addressing Fanady's habeas petition, but it finds its colleague's reasoning on a similar record persuasive.

## CONCLUSION

For the reasons set forth above, the Court abstains from exercising jurisdiction over Fanady's petition pursuant to *Younger* and therefore dismisses the petition without prejudice. *See Moses v. Kenosha Cnty.*, 826 F.2d 708, 710 (7th Cir. 1987)

7

(dismissal on abstention grounds is "without prejudice to the [petitioner's] right to raise the same contentions in a state tribunal"). Because the Court did not reach the merits of Fanady's petition, it does not count as a petition for the purposes of the "second or subsequent" petition bar. *Slack v. McDaniel,* 529 U.S. 473, 485–86 (2000).

The Court also declines to issue a certificate of appealability. To obtain a certificate of appealability, the applicant must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate that "reasonable jurists could debate whether … the petition should have been resolved in a different manner." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484). Fanady cannot make such a showing because the application of *Younger* abstention under the circumstances presented here is not reasonably debatable.

Civil case terminated.

ENTER:

Date: May 5, 2025

Georgia N. Alexakis
United States District Judge